**UNITED STATES COURT OF INTERNATIONAL TRADE**

------------------------------------------------------------------- X

CARBON ACTIVATED TIANJIN CO. LTD., and :
CARBON ACTIVATED CORPORATION,     :
    :
    Plaintiffs,     :
    :
    *v.*     :    **Court No. 22-00017**
    :
THE UNITED STATES     :
    :
    Defendant.     :

------------------------------------------------------------------- X

## COMPLAINT

Plaintiffs Carbon Activated Tianjin Co. Ltd., and Carbon Activated Corporation (hereinafter "Plaintiffs"), by and through their attorneys, state the following claims against Defendant, the United States:

## JURISDICTIONAL STATEMENT

1.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because the action is commenced under subparagraph (a)(2)(B)(iii) of Section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii). This action contests the final determination issued by the U.S. Department of Commerce (the "Department" or "Commerce") in the administrative review of the antidumping duty ("AD") order on Activated Carbon from the People's Republic of China, (case no. A-570-904) for the period of review April 1, 2019 through March 30, 2020. *Certain Activated Carbon from the People's Republic of China: Final Results of Anitdumping Duty Admistrative Review; and Final Determination of No. Shipments*; 2019-2020, 86 Fed. Reg. 73,731 (December 28, 2021) ("Final Results").

2.     Commerce's analysis of issues raised in the Final Results is contained in *Certain Activated Carbon from the People's Republic of China: Issues and Decision Memorandum for the*

*Final Results of the Thirteenth Antidumping Duty Administrative Review*. ("Issues and Decisions Memorandum").

## STANDING

3.      Plaintiff, Carbon Activated Tianjin Co. Ltd., is a foreign producer, and exporter of subject merchandise and, therefore, is an interested party as defined in section 771(9)(A) and 516A(f)(3) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Carbon Activated Tianjin Co. Ltd, was a mandatory respondent and fully participated in the proceeding being challenged.

4.      Plaintiff, Carbon Activated Corporation, is a United States importer of subject merchandise, and therefore, an interested party as defined in section 771(9)(A) and 516A(f)(3) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Carbon Activated Corporation fully participated in the proceeding whose results are being challenged.

5.      Accordingly, plaintiffs have standing to bring this action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6.      Commerce published a notice of the contested determination on December 28, 2021. *See Final Results*, 86 Fed. Reg. 73,731 (December 28, 2021).

7.      This action was timely commenced with the filing of the Summons on December 28, 2021, within 30 days after publication of the Final Results. Accordingly, this action is timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I).

## STATEMENT OF FACTS

8.      The AD Order on Certain Activated Carbon from the People's Republic of China was originally imposed in 2007. *See* 72 Fed. Reg. 20,988 (April 27, 2007) (the "AD Order").

9.      On June 8 2020, the Department initiated the 2019-2020 annual review, the 13th annual review of the AD Order. period of review. See Initiation of Antidumping and Countervailing Duty Administrative Reviews. *See* 85 Fed. Reg. 35068.

10.     On June 28, 2021, the Department published the preliminary results of the 13th annual review of the AD Order. *See Certain Activated Carbon from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2019– 2020*, 86 Fed. Reg. 33,988 (June 28, 2021).

11.     On September 27, 2021, Plaintiffs submitted their Case Brief to the Department in the 13th Administrative Review of the AD Order challenging, *inter alia*: (i) the Department's use of financial statements of Malaysian firms, Century and Bravo, to calculate financial ratios as part of its surrogate value calculation of normal values; (ii) the Department's valuation of Plaintiffs' carbonized material using Malaysian import data for "coconut shell charcoal" classified under subheading 4402.90.10000 of the Harmonized Tariff Schedule ("HTS") as part of the surrogate value construction; (iii) the Department's valuation of coal tar in the surrogate value calculation based on data reported under Malaysian subheading 2706.00, HTS, which data was unreliable and inexplicably showed a higher average unit value ("AUV") for coal tar than for pitch, a value-added product with a higher pitch concentration than coal tar; (iv) the Department's use of Malaysian subheading 2806.10, HTS, import data to value hydrochloric acid ("HC1") in the surrogate value calculation, on the ground that such data captured both pure HCl and HCl in aqueous solution; (v) the Department's use of Malaysian subheading 2711.11, HTS, to value steam in the surrogate value context at 14.52% of natural gas prices, because that subheading provided for liquefied natural gas, while gas should be valued at the values shown in Malaysian subheading 2711.21, HTS, for natural gas in the gaseous state; and (vi) the Department's use of Maersk Line freight

quotes to value ocean freight instead of Descartes data showing actual consummated transportation movements.

12.     The Department's final results rejected Plaintiffs' comments on all of the points noted in ¶ 11 of this Complaint, and instead based the final AD margin calculations on flawed data, rather than on the basis of substantial evidence on the record.

## COUNT I

13.     Paragraphs 1 through 12 are incorporated by reference as though fully set out herein.

14.     Commerce's decision to base financial ratios in the surrogate value calculation on data reported by Malaysian producers Century and Bravo is unsupported by substantial evidence on the record, arbitrary and capricious, and does not satisfy the statutory requirement that Commerce make determinations on the basis of the best available information.

15.     The Century and Bravo financial statements were improperly relied on by the Department and unsuitable because they did not present disaggregated information, resulting in Commerce's adoption of distorted overhead and sales, general expense and administrative expenses ("SGA").

16.     Commerce's rejection of financial data on the record from Romanian producer Romcarbon was not in accordance with law, as was the Department's determination that Romania was not a significant producer of comparable merchandise. The Romcarbon data was the best available information, as it was disaggregated and provides more accurate financial ratios.

17.     In the alternative, the Department erred by not considering and using information from the financial statements of Russian product JSC Sorbent to value financial ratios in the surrogate value calculation.

## COUNT II

18.     Paragraphs 1 through 17 are incorporated by reference as though fully set out herein.

19.     The Department improperly valued carbonized material for purposes of the surrogate value calculation by using Malaysian subheading 4402.91.1000, HTS, for coconut shell imports, and by inflating stale, non-contemporaneous data from a prior review.

20.     The Department erred by not using subheading 4402.90.9000, HTS, data for wood-based carbon, which more closely resembles the materials used by respondents to produce carbonized material. Because Malaysian data under subheading 4402.90, HTS, were demonstrably unreliable and impeached by domestic price data, the Department erred in not using reliable subheading 4402.90, HTS, data from a secondary surrogate country, Turkey. The Department's failure to do this left its Final Results concerning this factor of production unsupported by substantial evidence on the record and contrary to law.

## COUNT III

21.     Paragraphs 1 through 20 are incorporated by reference as though fully set out herein.

22.     The Department erred in valuing coal tar for purposes of the surrogate value calculation using Malaysian data for Malaysian subheading 2706.00, HTS, or Malaysian subheading 2708.10, HTS. The data relied upon by the Department was unreliable and aberrant, reporting higher AUVs for a basic product (*i.e.,* coal tar) than for a value-added product (*i.e.,* pitch). The Malaysian data was also aberrant as shown by Malaysian and Spanish domestic market prices and Spanish export and import prices.

23.     Coal tar should appropriately have been valued based on either the Malaysian domestic market price of $0.216/kg or the Russian subheading 2706.00, HTS, AUV of $0.172/kg, either of which are for more reflective of the value of pitch in a comparable market economy country.

24.     The Department's failure to properly value coal tar renders the Final Results unsupported by substantial evidence on the record and not in accordance with law.

### COUNT IV

25.     Paragraphs 1 through 24 are incorporated by reference as though fully set out herein.

26.     The Department erred in valuing hydrochloric acid ("HCl") for purposes of the surrogate value calculation by using Malaysian subheading 2806.10, HTS, data, which was not specific to the input, and which contained values for both pure HCl and HCl in aqueous form, the type used in making the imported activated carbon. The Department should have valued this factor of production using Brazilian subheading 2806.10.20, HTS, data which specifically covered HCl in aqueous solution.

27.     Commerce's failure to properly value coal tar renders the final determination unsupported by substantial evidence and not in accordance with law.

### COUNT V

28.     Paragraphs 1 through 27 are incorporated by reference as though fully set forth herein.

29.     The Department erred in valuing steam for purposes of the surrogate value calculation by using subheading 2711.11, HTS, data for liquefied natural gas, which is not product-specific to steam. To make its determination according to the best information available, the

Department should have valued steam with reference to the value for natural gas in a gaseous state, as reported in subheading 2711.21, HTS.

30.     The Department's failure to properly value steam renders the Final Results unsupported by substantial evidence and not in accordance with law.

## **COUNT VI**

31.     Paragraphs 1 through 30 are incorporated by reference as though fully set out herein.

32.     The Department erred in valuing ocean freight on the basis of boilerplate Maersk Line freight charge quotes which are unreliable and do not represent consummated transactions. By contrast, Descartes data on the record showed the value of actual freight (chemical) movements between China and the United States, and represented the best information available.

33.     The Department's failure to properly value ocean freight in its surrogate value calculation renders the Final Results unsupported by substantial evidence and not in accordance with law.

## PRAYER FOR RELIEF

34.     WHEREFORE, Plaintiffs respectfully pray that this Court (i) review the Department's Final Results on the basis of the record compiled before the agency, and set such determination aside as unsupported by substantial evidence and not in accordance with law; (ii) remand the Final Results to the Department for the correction of errors and the issuance of a revised final determination; and (iii) grant Plaintiffs such further and additional relief as this Court may deem just.

Respectfully submitted,

Neville Peterson LLP

*Counsel for Plaintiffs Carbon Activated Tianjin Co. Ltd., and Carbon Activated Corporation*

/s/ John M. Peterson
    John M. Peterson
    Patrick B. Klein
    One Exchange Plaza
    55 Broadway, Ste. 2602
    New York, NY 10006
    (212) 635-2730
    jpeterson@npwny.com

/s/ Richard F. O'Neill
    Richard F. O'Neill
    701 Fifth Ave., Ste. 4200-2159
    Seattle, WA 98104-4089
    (206) 905-3648
    roneill@npwny.com

Dated: February 24, 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
---------------------------------------------------------------- X
CARBON  ACTIVATED  TIANJIN  CO. LTD., and      :
CARBON ACTIVATED CORPORATION,                  :
                                               :
            Plaintiffs,                         :
                                               :
            v.                                  :      Court No. 22-00017
                                               :
THE UNITED STATES                              :
                                               :
            Defendant.                          :
---------------------------------------------------------------- X
```

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing COMPLAINT to be served upon the following persons by certified mail, return receipt requested, on this 24th day of February, 2022:

> Attorney in Charge
> International Trade Field Office
> Department of Justice, Civil Division
> Room 346, Third Floor
> 26 Federal Plaza
> New York, NY 10278
>
> General Counsel
> U.S. Department of Commerce
> 14th Street and Constitution Avenue, N.W.
> Washington, D.C., 20230
>
> Supervising Attorney
> Civil Division – Commercial Litigation Branch
> U.S. Department of Justice
> P.O. Box 480
> Ben Franklin Station
> Washington, D.C. 20044
>
> John M. Herrmann, Esq.
> Kelley Drye & Warren LLP
> 3050 K Street, NW
> Washington, DC 20007-5108

Francis J. Sailer, Esq.
Grunfeld Desiderio Lebowitz Silverman Klestadt, LLP
1201 New York Ave., NW
Washington, DC 20005

Daniel L. Porter, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, DC 20006

Gregory S. Menegaz, Esq.
deKieffer & Horgan
1090 Vermont Avenue, NW Suite 410
Washington, DC 20005

Meng Jing
Guantao Law Firm
18/F, Tower B, Xinsheng Plaza
5 Finance Street, Xicheng District
Beijing 100032, China

/s/ John M. Peterson
John M. Peterson

2