NONCONFIDENTIAL

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| CARBON ACTIVATED TIANJIN CO., LTD. and CARBON ACTIVATED CORPORATION,<br><br>Plaintiffs,<br><br>and<br><br>DATONG JUQIANG ACTIVATED CARBON CO., LTD., ET AL.,<br><br>Consolidated-Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>CALGON CARBON CORPORATION and CABOT NORIT AMERICAS, INC.,<br><br>Defendant-Intervenors. | Consol. Court No. 22-00017 |

**CONSOLIDATED PLAINTIFFS' REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENORS' RESPONSES TO CONSOLIDATED PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD**

                JOHN M. HERRMANN
                R. ALAN LUBERDA
                MELISSA M. BREWER
                JULIA A. KUELZOW
                KELLEY DRYE & WARREN LLP
                3050 K Street, N.W., Suite 400
                Washington, DC  20007
                (202) 342-8400

                **Counsel to Calgon Carbon Corporation and**
                **Norit Americas, Inc.**

March 24, 2023

## Table of Contents

**Page**

I. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT COMMERCE'S RELIANCE ON MALAYSIAN IMPORT DATA FOR MERCHANDISE CLASSIFIED UNDER HARMONIZED TARIFF SCHEDULE SUBHEADING 2701.19 TO VALUE DJAC'S CONSUMPTION OF BITUMINOUS COAL ................................................................................. 2

    A. Commerce Failed to Address Detracting Evidence and Its Reliance on the Import Value for "Other Coal" is Unsupported by Substantial Evidence ............................................................................ 2

    B. Commerce Improperly Relied on the AR11 Remand, to the Exclusion of Record Evidence, in Interpreting HTS Subheading 2701.12 ........................................................................................... 5

II. REMAND IS NECESSARY FOR COMMERCE TO RECONSIDER ITS ACCEPTANCE OF DJAC'S REPORTED CONSUMPTION OF BITUMINOUS COAL ................................................................................. 7

III. CONCLUSION AND REQUEST FOR RELIEF ....................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Albemarle Corp. & Subsidiaries v. United States,
    821 F.3d 1345 (Fed. Cir. 2016)........................................................................................ 4-5

Carbon Activated Tianjin Co. v. United States,
    547 F. Supp. 3d 1310 (Ct. Int'l Trade 2021) ...........................................................................6

**Administrative Decisions**

Silicon Metal from the People's Republic of China: Final Results and Partial
    Rescission of the 2008-2009 Administrative Review of the Antidumping Duty
    Order, 76 Fed. Reg. 3,084 (Dep't Commerce Jan. 19, 2011) and
    accompanying Issues and Decision Memornadum (Jan. 11, 2011) ..................................... 3-4

Certain Activated Carbon from the People's Republic of China:
    Final Results of Antidumping Duty Administrative Review; and Final
    Determination of No Shipments; 2019-2020, 86 Fed. Reg. 73,731 (Dep't
    Commerce Dec. 28, 2021) ("Final Results") and accompanying Issues and
    Decision Memorandum for the Final Results of the Thirteenth Antidumping
    Duty Administrative Review (Dec. 17, 2021) ("IDM") .................................................. *passim*

NONCONFIDENTIAL

On behalf of Consolidated Plaintiffs and Defendant-Intervenors Calgon Carbon Corporation and Norit Americas, Inc. (hereinafter, "Consolidated Plaintiffs"), we reply to the memoranda of law submitted on behalf of the United States (hereinafter, "Defendant") (ECF No. 36) and Defendant-Intervenors Datong Juqiang Activated Carbon Co., Ltd.; Datong Juqiang Activated Carbon USA, LLC; Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd.; and Datong Municipal Yunguang Activated Carbon Co., Ltd. (hereinafter, "Defendant-Intervenors") (ECF No. 38), and pertaining to the final results of the United States Department of Commerce's ("Commerce" or "the Department") thirteenth annual administrative review of the antidumping duty order on <u>Certain Activated Carbon from the People's Republic of China</u> (Commerce Case No. A-570-904) covering the period of review ("POR") April 1, 2019 through March 31, 2020. The final results of the Department's review were published as <u>Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2019-2020</u>, 86 Fed. Reg. 73,731 (Dep't Commerce Dec. 28, 2021) (hereinafter, "<u>Final Results</u>") (PR 314)[1] and the accompanying <u>Issues and Decision Memorandum for the Final Results of the Thirteenth Antidumping Duty Administrative Review</u> (Dec. 17, 2021) (hereinafter, "<u>I&D Memo</u>") (PR 308).

For the reasons provided in Consolidated Plaintiffs' opening brief and those provided herein, we respectfully urge the Court to find that the <u>Final Results</u> are unsupported by substantial evidence with respect to Commerce's selection of a surrogate value for bituminous coal and acceptance of DJAC's calculations for consumption of bituminous coal.

---

[1] Documents in the administrative record are cited by their confidential and/or public record number (<u>i.e.</u>, "(CR __)" and "(PR __)") provided in the Index to the Administrative Record filed with the Court on April 5, 2022 (ECF No. 16).

I. **SUBSTANTIAL EVIDENCE DOES NOT SUPPORT COMMERCE'S RELIANCE ON MALAYSIAN IMPORT DATA FOR MERCHANDISE CLASSIFIED UNDER HARMONIZED TARIFF SCHEDULE SUBHEADING 2701.19 TO VALUE DJAC'S CONSUMPTION OF BITUMINOUS COAL**

Defendant and Defendant-Intervenors urge this Court to sustain Commerce's determination to value DJAC's consumption of bituminous coal with Malaysian import data for merchandise classified under HTS subheading 2701.19, the provision for "Other coal." Their arguments, however, look past Commerce's failure to address detracting evidence in the record and its improper reliance on the agency's findings in the AR11 Remand.

    A. **Commerce Failed to Address Detracting Evidence and Its Reliance on the Import Value for "Other Coal" is Unsupported by Substantial Evidence**

Defendant fails to identify any statement in Commerce's I&D Memo that demonstrates the agency meaningfully considered, let alone addressed, evidence that detracted from its determination to value the bituminous coal consumed by DJAC with Malaysian import data for merchandise classified under HTS subheading 2701.19. See generally Def.'s Br. at 40-43. Nor could it.

Instead, Defendant repeats the conclusory finding by Commerce that, although the UHV and GCV scales are separate scales to calculate heat value for non-coking coal,

> 'there is insufficient record evidence to demonstrate that the heat values discussed in the HSN explanatory notes are derived using either the UHV or GCV scale because the notes do not explicitly state one way or the other.'

Def.'s Br. at 41 (quoting I&D Memo at 21). To reach that conclusion, Commerce ignored detracting evidence that Petitioners raised in their rebuttal case brief. Specifically, Petitioners explained that the record evidence submitted by respondents themselves indicated that the UHV scale and GCV scale are two separate scales that result in different ratings for the same grade of

non-coking coal.  See Petitioners' Rebuttal Br. at 25-26 (CR 218; PR 303) (citing DJAC's Supplemental Section D Questionnaire Response, at Exh. SD-13 (May 21, 2021) (CR 146-73; PR 243-256) (hereinafter, "DJAC's SDQR")).

Commerce also failed to address record evidence indicating that the UHV scale was specific to the Indian coal industry.  As Petitioners explained in their rebuttal case brief, the only reference to the UHV scale on the record was a report on the state of coal mining in India, which also referenced conditions, definitions, and standards in India.  See Petitioners' Rebuttal Br. at 26 (CR 218; PR 303) (citing DJAC's SDQR at Exh. SD-13 (CR 146-61; PR 244-51)).  Defendant nonetheless asserts that Commerce found there was "no record evidence on the record to support" this understanding of the UHV scale in its I&D Memo.  See Def.'s Br. at 42 (citing I&D Memo at 22).  A review of the I&D Memo, however, reveals that Commerce did not address the provenance of the UHV scale, and it is unclear where Defendant believes Commerce did so.  See I&D Memo at 20-23.

Similarly, Defendant-Intervenors do not address Commerce's failure to consider the apparent source of the UHV scale on the underlying record.  They claim that the UHV scale "is universal," based on a selection of determinations in unrelated proceedings involving Chinese producers.  See Def.-Int. Br. at 7.  None of the determinations identified by Defendant-Intervenors, however, were presented to Commerce for its consideration during the underlying proceedings.  See generally DJAC's Case Br. at 27-37 (Sept. 27, 2021) (CR 214-15, PR 295).  Defendant-Intervenors also mischaracterize the Department's Issues and Decision Memorandum in Silicon Metal from the People's Republic of China as Commerce "applying" the UHV scale.  See Def.-Int. Br at. 7.  In that proceeding, the Department observed that the Indian coal classification system is benchmarked to the UHV scale.  See Silicon Metal from the People's

<u>Republic of China: Final Results and Partial Rescission of the 2008-2009 Administrative Review of the Antidumping Duty Order</u>, 76 Fed. Reg. 3,084 (Dep't Commerce Jan. 19, 2011) and accompanying Issues and Decision Memorandum at 15-16 ("{T}he Indian coal system uses an empirical formula to identify commercial-grade non-coking coal. Specifically, the Indian coal classification system identifies commercial-Grade A non-coking coal as having a UHV in excess of 6200 kCal/Kg, pursuant to the following formula: UHV = 8900 - 138 (A + M), where A is ash percentage and M is moisture percentage."). That observation, in a separate proceeding with a distinct record, does not bear on this proceeding – nor alleviate Commerce's duty to address the argument raised by Petitioners in its rebuttal case brief.

In defending Commerce's reliance on the fourth administrative review of the antidumping order on certain activated carbon from China (hereinafter, "AR4"), Defendant-Intervenors repeat Commerce's error. They contend that, irrespective of AR4's distinct record, Commerce's AR4 findings concerning Note 2 of the Thai tariff schedule should be "extended to the identically worded and harmonized Note 2 in Chapter 27 of the Malaysian tariff" schedule on this record. Def.-Int. Br. at 7. Unlike in AR4, where Commerce found that "{t}he HTS description characterizes this bituminous coal as having a UHV above 5883 Kcal/kg," <u>AR4 IDM</u> at 15 n. 82, Commerce, here and on this record, concluded that "there is insufficient record evidence to demonstrate that the heat values discussed in the HSN explanatory notes are derived using either the UHV or GCV scale." <u>I&D Memo</u> at 21. Because there is evidence on the underlying record that the UHV scale is not reflected in the Malaysian import statistics to value the bituminous coal input, Commerce erred in relying on a finding in a prior review that was made on a record that is distinct from the record at issue in the underlying proceedings. <u>Cf.</u>

Albemarle Corp. & Subsidiaries v. United States, 821 F.3d 1345, 1356 (Fed. Cir. 2016). Defendant-Intervenors' arguments miss the mark.

### B. Commerce Improperly Relied on the AR11 Remand, to the Exclusion of Record Evidence, in Interpreting HTS Subheading 2701.12

Defendant concedes that in the AR11 Remand Commerce did not solely "focus specifically on heat value" and engaged in an analysis of the plain language of the HTS subheadings 2701.12 and 2701.19 to value the respondents' bituminous coal input. See Def.'s Br. at 43; I&D Memo at 22 (PR 308) (citing Final Results of Redetermination Pursuant to Court Remand; Carbon Activated Tianjin Co., Ltd. and Carbon Activated Corporation, et al. v. United States, Ct. No. 20-00007 (Dep't Commerce June 30, 2021) ("AR11 Remand"), aff'd, 547 F. Supp. 3d 1310 (Ct. Int'l Trade 2021), appealed on other grounds, Appeal No. 22-1298 (Fed. Cir.) (docketed on Dec. 22, 2021)). A review of Commerce's I&D Memo, however, reveals that Commerce narrowly construed the AR11 Remand as "not focus{ed} . . . on the issue of coking versus non-coking bituminous coal" but on "specifically heat value." I&D Memo at 22 (PR 308). Commerce explained:

> Accordingly, the two descriptions for HTS 2701.19 asserted by the petitioner (*i.e.,* non-coking and bituminous) are not explicitly stated in the description of the subheading. Therefore, we cannot definitively state that they are included under this subheading as opposed to HTS 2701.12, which does contain explicit mentions of these descriptions. However, *this point is inapposite as the determination in the Activated Carbon AR11 Remand did not focus its analysis on the issue of coking versus non-coking bituminous coal, but instead focused specifically on heat value.* As HTS 2701.19 is for heat values below 5,833 kcal/kg, it is necessarily more product-specific than HTS 2701.12.144. *As the bituminous coal used by Datong Juqiang and its supplier fit that singular criterion, we will use HTS 2701.19 to value the mandatory respondents' bituminous coal raw material input for the final results.*

Id. (emphasis added).  Defendant, therefore, mischaracterizes Commerce's analysis.

Further, Defendant asserts that there was "no need" for Commerce to analyze the plain meaning of HTS subheading 2701.12 ("Bituminous Coal, Whether Or Not Pulverized, But Not Agglomerated") and HTS subheading 2701.19 ("other coal"), because there was "sufficient evidence on the record for Commerce to determine the respondents' respective heat values to select the appropriate HTS subheading." Def.'s Br. at 43.  Evidence on respondents' heat values, however, does not bear on the construction of HTS subheadings.  Here, the record contains ASEAN tariff schedules, which specified that HTS subheading 2701.12 covers "bituminous coal" including coking and non-coking bituminous coal that are classifiable under HTS subheading 2701.12.1000 and HTS subheading 2701.12.9000, respectively, whereas HTS subheading 2701.19 covers "other coal." See Respondents SV Submission at Exhibit 5C (PR 114).  Commerce, however, failed to consider that evidence and carried forward the construction of HTS subheadings from the AR11 Remand.  Cf. I&D Memo at 22.  Because Commerce does not reference the record in interpreting the HTS subheadings, its conclusion is not supported by substantial evidence.

Finally, Defendant-Intervenors incorrectly claim that because HS Chapter notes are harmonized, the court's affirmation of Commerce's determination in the eleventh administrative review to extend Thai tariff Chapter 27, Note 2, to Malaysian HS data in Carbon Activated Tianjin Co. v. United States, 547 F. Supp. 3d 1310 (Ct. Int'l Trade 2021), supports Commerce's interpretation of HTS subheadings 2701.12 and 2701.19 here.  See Def.-Int. Br. at 7-8.  There is no evidence, however, that Commerce "extended" such a finding from the eleventh administrative review.  Defendant-Intervenors' post hoc rationalization is no substitute for Commerce's failure to support its determination with substantial evidence.

## II. REMAND IS NECESSARY FOR COMMERCE TO RECONSIDER ITS ACCEPTANCE OF DJAC'S REPORTED CONSUMPTION OF BITUMINOUS COAL

Defendant's response to Consolidated Plaintiffs' argument that Commerce mistakenly accepted DJAC's misreported consumption of bituminous coal is two-fold. First, Defendant responds that Consolidated Plaintiffs' argument that Commerce misunderstood DJAC's calculation of bituminous coal consumption is unclear. See Def.'s Br. at 27. Second, it simply restates Commerce's rationale in the I&D Memo for accepting DJAC's calculations, without responding to Consolidated Plaintiffs' arguments. See id.

The Government's recitation of the rationale in the I&D Memo, and failure to address Consolidated Plaintiffs' arguments, demonstrates the need for remand to allow Commerce to further consider this issue. As explained in Consolidated Plaintiffs' opening brief, the record indicates that Commerce misunderstood and mistakenly accepted DJAC's reported bituminous coal consumption in the post-preliminary results questionnaire response and, furthermore, applied a methodology in the Final Results that is inconsistent with the methodology the agency purported to use in the prior segment. See Consol. Pl. Br. at 24-29. As a result, DJAC's reported consumption of bituminous coal is understated and must be corrected.

The Government acknowledges two important facts in its brief. First, Commerce is required to calculate the normal value in a non-market economy proceeding based on the aggregation of the quantities of all raw materials consumed in the production of one unit of the finished goods. See Def.'s Br. at 44. Second, Commerce recognized during the review that DJAC's total bituminous coal consumption quantities calculated with standard consumption rates *did not* equal its reported total actual consumption quantities of bituminous coal during the POR. See id. Although these two points are true, the Final Results are unsupported by substantial

-7-

evidence because DJAC's consumption calculations, which Commerce ultimately accepted despite DJAC's noncompliance with Commerce's reporting instructions, do not actually reflect the inclusion of all bituminous coal consumed, as DJAC excluded the closing inventory balance for carbonized material. See Consol. Pl. Br. at 24-29; see also Letter from the Department of Commerce to DJAC, "Section C Third Supplemental Questionnaire, and Section D Second Supplemental Questionnaire," at 6-7 (July 19, 2021) (CR 200; PR 283). Thus, the general points Defendant asserts are correct, but it fails to recognize that the actual calculations do not reflect those principles.

Defendant simply repeats Commerce's cursory acceptance of DJAC's calculation methodology, but misses the critical flaw – *the closing inventory balance must be accounted for somewhere, either as the closing balance of one review or the opening balance of the next review.* See Consol. Pl. Br. at 22-26. A comparison of the final results of the twelfth administrative review and the final results of the underlying thirteenth administrative review demonstrates that Commerce's current approach fails to account for this balance *anywhere*. Defendant acknowledges that in the twelfth review Commerce *excluded* the opening balance and stated that:

> including the amount of bituminous coal consumed in the production of carbonized material consumed from opening inventory in the calculation of the per-unit bituminous coal consumption in the current {period of review} would { } result in double-counting the bituminous coal consumed in the previous {period of review}.

Def.'s Br. at 45 (citing Certain Activated Carbon from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the Twelfth Antidumping Duty Administrative Review Issues and Decision Memorandum, at 11 (Dep't Commerce Feb. 12,

-8-

2021) (hereinafter "AR12 IDM"), ref. in, 86 Fed. Reg. 10,539 (Feb. 22, 2021)). This conclusion, however, presupposes that the opening inventory volume *will be included as closing inventory in the prior review*, or else there would be no concern of "double-counting." Consol. Pl. Br. at 29-30. Thus, if Commerce *excludes* that volume as opening inventory, then it must *include* it as closing inventory so that it is accounted for somewhere and at some point in the dumping calculations from review to review. See id. Here, Commerce accepted DJAC's calculations that *excluded* the closing inventory from the consumption factor for bituminous coal. See Consol. Pl. Br. at 28-29. Therefore, if Commerce, as stated in the twelfth review, intends to rely on a methodology that *excludes* the opening inventory balance from the calculation of consumption factors in any given period of review, then it must *include* the closing inventory balance in the same period of review. Id.

Defendant asserts that DJAC properly excluded the opening inventory balance of low-ash carbonized material from its reported total standard consumption of bituminous coal (see Def.'s Br. at 45), but fails to address in any manner how DJAC complied with the Department's instructions to "include{} the closing POR inventory balance." Letter from the Department of Commerce to DJAC, "Section C Third Supplemental Questionnaire, and Section D Second Supplemental Questionnaire," at 6-7 (July 19, 2021) (emphasis added) (CR 200; PR 283). By doing so, it fails to explain how Commerce's finding that the reported difference between DJAC's actual and standard consumption of bituminous coal is accurately explained (in part) by the normal-ash carbonized material in the closing inventory is consistent with the Department's ruling in the twelfth administrative review. Because this closing inventory balance will be reported as an opening inventory in the subsequent POR, the bituminous coal equivalent used for production will also not be captured in DJAC's per-unit bituminous coal consumption factors

pursuant to the Department's ruling in the twelfth administrative review.  <u>See</u> Consol. Pl. Br. at 29-30.

Defendant-Intervenors' arguments are helpful in several ways.  First, they confirm that the closing inventory balance was excluded from DJAC's calculations.  <u>See</u> Def-Int. Br. at 21 ("Petitioners' real objective is to somehow compel the addition of [     ] MT bituminous coal equivalent of the closing inventory of carbonized-material (normal-ash), to the total bituminous coal consumed.").  Second, Defendant-Intervenors cite DJAC's calculated yield ratio of [     ] MT of bituminous coal input to produce one metric ton of normal-ash carbonized output used in the consumption calculations.  <u>See</u> <u>id.</u> at 15-16.  This highlights the inconsistency in DJAC's calculations – the yield ratio *includes* the total amount of bituminous coal consumed during the POR and the respective total output of normal-ash carbonized material produced.  Thus, this methodology requires proper accounting for the opening and closing inventory balances of the carbonized material recorded during the POR.  DJAC's per-unit FOP reporting excludes the closing inventory portion of bituminous coal consumed, as reflected in the following chart:



DJAC cannot have it both ways.[2]  DJAC claims that accounting for the beginning and ending inventory balances for normal-ash carbonized material is not necessary for FOP reporting, which would be true if DJAC had used a bituminous coal consumption ratio that was based *only* on the bituminous coal and normal-ash carbonized material that were used in the production of normal-ash and low-ash activated carbon.  Had DJAC used that approach to calculate the consumption ratio of bituminous coal per metric ton output of normal-ash carbonized material, it would not have to account for the beginning and ending inventory balances of normal-ash carbonized material that were not processed into finished products.  However, this is not the case here.

For these reasons, the Court should remand the calculation of bituminous coal consumption to Commerce for further findings.

### III. CONCLUSION AND REQUEST FOR RELIEF

For the reasons provided in this memorandum of law, Consolidated Plaintiffs respectfully request that this Court:

---

[2]  As explained in Consolidated Plaintiffs' opening brief, while DJAC complied with Commerce's final reporting instructions with respect to Screenings 2, it did not follow Commerce's instructions to exclude the opening POR inventory balance from the reported bituminous coal consumed.  See Consol. Pl. Br. at 26 n.6.

(a)     hold that Commerce's <u>Final Results</u> are unsupported by substantial evidence and are otherwise not in accordance with law with respect to the claims advanced by Consolidated Plaintiffs;

(b)     remand the <u>Final Results</u> to the Commerce Department with instructions to correct the errors set forth in this memorandum of law; and

(c)     provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

<u>/s/ John M. Herrmann</u>
JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER
JULIA A. KUELZOW
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Calgon Carbon Corporation and Norit Americas, Inc.

Dated: March 24, 2023

**CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES**

Pursuant to this Court's Order dated August 18, 2022 (ECF No. 29), setting the word limitation to the Reply Brief of Consolidated Plaintiffs Calgon Carbon Corporation and Norit Americas Inc. (collectively, "Consolidated Plaintiffs") to 7,000 words, counsel for Consolidated Plaintiffs certifies that the attached Reply Brief contains **3,494 words**, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.

Respectfully submitted,

/s John M. Herrmann
JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER
JULIA A. KUELZOW
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Calgon Carbon Corporation
and Norit Americas, Inc.

Dated:  March 24, 2023